## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **FARMERS INSURANCE** | § | |
| **COMPANY, INC.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-20-CV-126-PRM** |
| | § | |
| **QUALITY TRUCK &** | § | |
| **TRAILER REPAIR,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

On this day, the Court *sua sponte* considered the above-captioned cause. For the reasons that follow, the Court concludes that default judgment should be entered in Plaintiff Farmers Insurance Company, Inc.'s favor.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

This is a negligence action arising from a welding fire. Plaintiff Farmers Insurance Company, Inc. [hereinafter "Plaintiff"] brings this action as subrogee of Nandkishor and Geeta Parmar-Patel [hereinafter "Insured"]. First Am. Compl. 1, May 7, 2020, ECF No. 4 [hereinafter "Complaint"].

Plaintiff alleges that it provided the Insured with a policy of insurance that covered the Insured's personal property [hereinafter "Property"].  According to Plaintiff, the Insured hired Bekins Moving Company [hereinafter "Bekins"] to transport the Property from "their residence in San Ramon, California to their new residence located in Houston, Texas."  *Id.* ¶ 8.  Plaintiff alleges that "Bekins transported the Property by loading it into a tractor-trailer rig."  *Id.* ¶ 9

While en route to the destination, Bekins' driver stopped in Texas after "notic[ing] something loose on the trailer" carrying the Property.  *Id.* ¶ 10.  Thereafter, on July 16, 2019, "the Bekins driver drove the tractor-trailer to Quality Truck & Trailer Repair" [hereinafter "Defendant"] and "requested repair/welding to the roof of the [t]railer."  *Id.* ¶ 11.

Plaintiff further alleges that on July 17, 2019 "a welder working for [Defendant]" was performing the requested repairs when he noticed "smoke and fire coming from the [t]railer's roof."  *Id.* ¶¶ 13–14.  After attempting to extinguish the fire himself, "[t]he welder contacted the El Paso Fire Department who, upon arrival utilized a type of foam to extinguish the fire." *Id.* ¶¶ 15, 17.  Defendant then moved the

tractor-trailer to a different part of its worksite, *id.* ¶ 18, but did not remove the Property from the trailer "subsequent to the [i]nitial [f]ire," *id.* ¶ 21.  As a result, Plaintiff alleges that, at approximately 4:00 a.m. on July 18, 2019, the fire "rekindled causing a total loss of the [Insured's] Property contained within the [t]railer." *Id.* ¶¶ 19, 22.

Plaintiff avers that it paid for "damages to the Property" "[p]ursuant to its policy of insurance with the Insured[s]" and that Plaintiff "is therefore subrogated to that amount." *Id.* ¶ 23. Accordingly, Plaintiff brings this action as subrogee of the Insured. *Id.* at 1.

Plaintiff alleges that Defendant "had a duty to protect the [Insured's] Property from being destroyed" and "to act in a reasonable and prudent manner with regard to welding on the [t]railer." *Id.* ¶ 25. Additionally, Plaintiff alleges that Defendant had a duty to remove the Insured's "Property from the [t]railer in a reasonable and prudent manner prior to welding." *Id.* ¶ 26.

Plaintiff further alleges that Defendant failed to discharge these duties, *id.* ¶ 27, and that this failure was the "direct and proximate cause" of the damages it sustained, *id.* ¶ 28.  Plaintiff contends that the

"welding event ignit[ed] the Property located within the trailer" and caused the initial fire.  *Id.* ¶ 20.  Plaintiff further contends that Defendant failed to remove "the Property that remained in the [t]railer" and, as a result, caused the fire to re-ignite.  *Id.* ¶ 21.

As a result of the "total loss of the Property contained within the Trailer," *id.* ¶ 19, Plaintiff alleges that "the Insured suffered damages in excess of $500,000.00," *id.* ¶ 22, and that Plaintiff "is therefore subrogated to that amount," *id.* ¶ 23.

Plaintiff filed its Complaint on May 6, 2020.  On May 7, 2020, summons was issued as to Defendant.  Summons Civil Action, May 7, 2020, ECF No. 3 [hereinafter "Summons"].  Therein, Defendant was apprised that a response was required "[w]ithin 21 days after service" pursuant to the Federal Rules of Civil Procedure."  *Id.* at 1.  Defendant was further apprised that a "fail[ure] to respond" would result in "judgment by default . . . be[ing] entered . . . for the relief demanded in the complaint."  *Id.*

On July 30, 2020, Plaintiff filed its "Return of Service" (ECF No. 5).  Therein, Leticia Briano, a process server, declares under penalty of perjury that on July 24, 2020 a copy of the Complaint and

Summons was served on "Fernando who represented that they were authorized to accept service on behalf of [Defendant]."  Return of Service 1.  Defendant did not file a response within twenty-one days of receiving service of process.

On August 24, 2020, the Court entered its "Order" (ECF No. 7), directing Plaintiff to request an entry of default against Defendant or dismiss the cause.  Thereafter, on August 27, 2020, Plaintiff filed its "Motion for Entry of Default" (ECF No. 8) [hereinafter "Motion"].  In support of its Motion, Plaintiff filed an affidavit [hereinafter "Affidavit"] signed by Jonathan Strybos, a subrogation representative employed by Plaintiff.  Mot. Ex. A, at 1.  Plaintiff also included a document [hereinafter "Payment Log"] memorializing a payment for $203,337.21 from Plaintiff to the Insured that occurred on October 28, 2019.  Mot. Ex. B, at 1.  On September 8, 2020, the Clerk entered Defendant's default.  Entry of Default, Sep. 8, 2020, ECF No. 9.

In its Motion, Plaintiff states that "Defendant has failed to file an answer or otherwise respond to [the] Complaint," as of August 27, 2020.  Mot. ¶ 4.  Plaintiff further states that "[p]ursuant to its policy of insurance with the [Insured], [Plaintiff] has paid" $203,337.21 "for

damages to the Property as a result of the Defendant's negligence."

Mot. ¶ 7; *see also* Aff. ¶ 4; Payment Log 1.  Plaintiff states it "resolved a

portion of [its] claim with . . . [Bekins] in the amount of $75,320."  Mot.

¶ 7; *see also* Aff. ¶ 5.  Thus, after reducing the amount paid out to the

Insured by the amount recovered from Bekins, Plaintiff contends that

"$128,017.21 [remains] due and owing from Defendant."  Mot. ¶ 7; Aff.

¶ 5.

As of the date of this Order, Defendant has not entered an

appearance in the above-captioned cause.

## II.   LAW AND ANALYSIS

### A.   Default Judgment

Rule 55 governs the procedure by which a party may seek entry of

party's default and a default judgment.  *N.Y. Life Ins. Co. v. Brown*, 84

F.3d 137, 141 (5th Cir. 1996).  If a party "against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend," and

"that failure is shown by affidavit or otherwise, the clerk must enter the

party's default."  Fed. R. Civ. P. 55(a).  Once a party's default has been

entered, as default judgment may be requested pursuant to Rule 55(b).

Fed. R. Civ. P. 55(b).  The Fifth Circuit has summarized the process set forth by Rule 55:

> A *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules.  An *entry of default* is what the clerk enters when the default is established by affidavit or otherwise . . . . After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment.*

*N.Y. Life*, 84 F.3d at 141.

Rule 55(a) provides that the "clerk *must* enter the party's default," provided the default is established by "affidavit or otherwise." (emphasis added).  However, "[a] party is not entitled to a default judgment"—as opposed to entry of default—"as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 350–52 (1987)).

The Fifth Circuit has cautioned that "[d]efault judgments are a drastic remedy, not favored by the Federal Rules." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (quoting *Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)).  Rather than allowing a party to terminate litigation by

7

resorting to "procedural maneuver[s]," such as a default judgment, courts should instead "dispos[e] of cases on their merits." *Sun Bank*, 874 F.2d at 276.

Accordingly, a default judgment is appropriate "only in extreme situations," such as when "the adversary process has been halted because of an essentially unresponsive party." *Id.*; *see also Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (articulating factors relevant to the entry of a default judgment). Even in such extreme situations, a default judgment may be entered only if the party seeking default judgment has asserted a cognizable legal claim supported by well-pleaded factual allegations. *See, e.g.*, *Lewis*, 236 F.3d at 768; *Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

To properly resolve Plaintiff's Motion, the Court must determine: (1) whether a default judgment is procedurally warranted; (2) whether Plaintiff's Complaint sufficiently sets forth facts supporting its claim; and (3) what form of relief, if any, Plaintiff should receive. *See, e.g.*, *United States v. Giles*, 538 F. Supp. 2d 990, 993 (W.D. Tex. 2008)

(Martinez, J.); *Moreland v. A-Q-B, LLC*, No. 6-19-CV-00372-ADA, 2019

U.S. Dist. LEXIS 213224, at *3 (W.D. Tex. Dec. 11, 2019).

## B.    Entry of Defendant's Default Was Proper

Since the entry of default is a prerequisite for a default judgment,

the Court first considers whether the Clerk's entry of default was

appropriate.  *See N.Y. Life*, 84 F.3d at 141.

 "If the plaintiff files a sufficient application for entry of default,

'the clerk *must* enter the party's default." *Jefferson v. La. Dep't of Pub.*

*Safety & Corr.*, 401 F. App'x 927, 929 (5th Cir. 2010) (quoting

Fed. R. Civ. P. 55(a)).  Rule 55(a) provides that a party moving for an

entry of default must establish a party's default by "affidavit or

otherwise."  To determine whether the Clerk's entry of default was

appropriate, the Court must find that the basis for the entry of

Defendant's default was clearly established.

On August 27, 2020, Plaintiff filed its Motion requesting entry of

Defendant's default.  Mot. 2.  Therein, Plaintiff alleges that its

Complaint was filed on May 7, 2020, *id.* ¶ 1; that Defendant was served

with a copy of the Complaint and Summons on July 24, 2020, *id.* ¶ 2;

that a response was due with twenty-one days of service of process, here

by August 14, 2020, *id.* ¶ 3 (citing Fed. R. Civ. P. 12(a)(1)(A)(i)); and that, as of August 27, 2020, "Defendant ha[d] failed to file an answer or otherwise respond to [the] Complaint," *id.* ¶ 4.

Pursuant to Rule 12, Defendant was required to file a responsive pleading "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). The record establishes that Defendant received service of process on July 24, 2020. Return of Service 1. Thus, Defendant was required to file a responsive pleading by August 14, 2020. However, no response was filed within twenty-one days of service of process or anytime thereafter. The Court also notes that the Summons informed Defendant that a "fail[ure] to respond" would result in "judgment by default [being] entered . . . for the relief demanded in the complaint." Summons 1.

Accordingly, the Court is of the opinion that the present record clearly establishes Defendant's "fail[ure] to plead or otherwise defend." Fed. R. Civ. P. 55(a). For this reason, the Court concludes that the Clerk's entry of Defendant's default was proper, and that the procedural requirements for default judgment are satisfied. *See N.Y. Life*, 84 F.3d at 141.

### C.    Plaintiff's Pleading Supports Default Judgment

The Court next considers whether Plaintiff's pleading suffices to support a default judgment.  Since the Complaint sets forth a *prima facie* cause of action for negligence and includes specific factual allegations, the Court concludes that Plaintiff's pleading suffices to support the entry of a default judgment.

A default judgment may be entered only if the pleadings, which are assumed to be true, provide "a sufficient basis" for the judgment. *Nishimatsu,* 515 F.2d at 1206 (citing *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)).  Pleadings may support a default judgment provided they comport with the requirements of Rule 8.  *Wooten,* 788 F.3d at 498.

Rule 8 "requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 is intended to "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted)); *see also Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (quoting *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir. 1993) ("The 'fair notice' pleading requirement is met" when a

claim is "sufficiently articulated" such that the adverse party is "'not a victim of unfair surprise.'").

"[D]etailed factual allegations are not required" under this standard; the complaint need only "raise a right to relief above the speculative level, on the assumptions that all the allegations in the complaint are true." *Wooten,* 788 F.3d at 498 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555).

Accordingly, the Court must determine whether the Complaint is well-pleaded for purposes of Rule 8's fair-notice standard. *See*, *e.g.*, *Wooten,* 788 F.3d at 498; *Nautilus Ins. Co. v. A Best Am. Roofing, LLC,* No. EP-18-CV-320-PRM, 2019 U.S. Dist. LEXIS 57372, at *6 (W.D. Tex. Apr. 3, 2019) (Martinez, J.) (citing *Wooten,* 788 F.3d at 498).  For the reasons below, the Court concludes that the Complaint satisfies the "low threshold of Rule 8" and supports entry of a default judgment. *Wooten,* 788 F.3d at 498 (quoted in *SEC v. McDuff*, 697 F. App'x 393, 394 (5th Cir. 2017)).

### 1.   Plaintiff's Right to Subrogation is Well-Pleaded

Plaintiff brings this action as subrogee of the Insured.  Compl. 1. The Court first considers whether Plaintiff's subrogation right is

well-pleaded.  Because Plaintiff has alleged specific facts supporting its right to bring this action, the Court determines that Plaintiff's subrogation right against Defendant is well-pleaded.

"Subrogation is the right of one who has paid an obligation which another should have paid to be indemnified by the other." *Tax Ease Funding, L.P. v. Thompson (In re Kizzee-Jordan)*, 626 F.3d 239, 245 (5th Cir. 2010) (quoting *Tex. Ass'n of Sch. Bds. v. Ward*, 18 S.W.3d 256, 258 (Tex. App. 2000)).  Thus, "[w]hen an insurer pays out on its insured's loss, it becomes a 'pro tanto owner' of the cause of action." *Concierge Nursing Centers, Inc. v. Antex Roofing, Inc.*, 433 S.W.3d 37, 44 (Tex. App. 2013) (quoting *Thoreson v. Thompson*, 431 S.W.2d 341, 347 (Tex. 1968)).  "This means that the insurer receives the rights of its insured to the extent of payments made under the insurance contract." *Id.* (quotation omitted).

An insurer's subrogation right may be "contractual . . . aris[ing] from contract language, or equitable" which exists to "to prevent the insured from receiving a double recovery to the insurer's detriment." *Id.* (citing *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 647 (Tex. 2007)).

Here, Plaintiff alleges that its subrogation right arises from "a policy of insurance to the Insured[]." Compl. ¶ 7. Plaintiff further alleges that it paid the Insured "[p]ursuant to its policy of insurance" and "is therefore subrogated to that amount." *Id.* ¶ 23. The Affidavit provides additional support for this conclusion. Therein, a subrogation representative under Plaintiff's employ attests that Plaintiff paid the Insured $203,337.21 for the destroyed Property pursuant to the insurance policy. Aff. ¶ 4. Although Plaintiff recovered a portion of the amount paid to Insured, Plaintiff alleges that it remains subrogated to the amount of $128,017.21, which it seeks to collect from Defendant. Mot. ¶ 7; Aff. ¶ 5.

The Court concludes that Plaintiff alleges particular facts establishing its right to bring this action as subrogee of the Insured. *Concierge Nursing Centers*, 433 S.W.3d at 44. Accordingly, the Court determines that Plaintiff's subrogation right is well-pleaded for the purpose of supporting a default judgment. *Wooten,* 788 F.3d at 498.

<u>2.</u>   <u>Plaintiff's Negligence Action is Well-Pleaded</u>

As subrogee of the Insured, Plaintiff asserts a negligence cause of action. Compl. 1. The Court next considers whether the negligence

14

action is well-pleaded and may support a default judgment.   For the reasons below, the Court concludes that the negligence action is pleaded with enough particularity that Defendant has fair notice of Plaintiff's claim and the grounds upon which it is based.

To assert a negligence action, a party must plead "a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (quoting *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)).  In *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, the Texas Supreme Court encountered an analogous situation.  445 S.W.3d 716 (Tex. 2014).  The *Chapman* court held that "the negligent performance of a contract that proximately injures a non-contracting party's property" may give rise to a cognizable negligence action.  *Id.* at 717.  Hence, the Court considers the adequacy of Plaintiff's pleadings in light of *Chapman*.

Here, Plaintiff alleges that Bekins contracted with Defendant to have the tractor-trailer carrying the Property repaired.  Compl. ¶ 11. Plaintiff further alleges that the trailer caught fire while Defendant's employee was attempting to repair the trailer.  Compl. ¶¶ 14–15.

Although this fire was temporally extinguished, Plaintiff alleges the fire later rekindled, resulting in the "total loss of the Property contained within the [t]railer." Compl. ¶¶ 17, 19–20. Plaintiff contends that these factual allegations show that "Defendant had a duty to protect the Property from being destroyed," that "Defendant breached [this] dut[y]," and that "Defendant's breach of its duty was the direct proximate cause of the damages sustained by Farmers." Compl. ¶ 24–28.

After due consideration, the Court concludes that the Complaint alleges a cognizable negligence action. In *Chapman*, the Texas Supreme Court held that a homeowner could pursue a negligence action against an allegedly negligent plumber, even though privity of contract was absent, because the plumber-subcontractor was hired to repair the very property that was damaged. 445 S.W.3d at 718. The *Chapman* court reasoned that the "plumber assumed an implied duty not to flood or otherwise damage the [plaintiff's] house while performing its contract with the builder." *Id.*

Like the homeowner in *Chapman*, the current action involves a non-contracting party whose property was damaged by the allegedly negligent performance of a contractual service. *See* Compl ¶¶ 11–20.

16

Thus, the Court determines that Plaintiff asserts a cognizable negligence action under Texas law.

In addition, the Court determines Plaintiff's claim is well-pleaded under Rule 8's fair-notice standard.  The Complaint sets forth particular facts supporting Plaintiff's theory of liability, such that Defendant has notice of Plaintiff's "claim . . . and the grounds upon which it rests."  *Wooten,* 788 F.3d at 498 (quoting *Bell Atl.*, 550 U.S. at 555).  Plaintiff is not alleging an inchoate theory of liability.  *Cf. Iqbal,* 556 U.S. at 678.  Instead, Plaintiff alleges specific facts supporting its claim for relief.  Compl. ¶¶ 11–20.  Moreover, the Complaint expressly alleges the elements for a *prima facie* negligence action, Compl. ¶¶ 25–28, thus providing further notice of the issues Plaintiff seeks to litigate.  *Cf. Garvey v. Vawter,* 795 S.W.2d 741, 742 (Tex. 1990) (holding that an "explicit allegation of proximate cause" provides "ample notice" of the issues to be tried).

Accordingly, the Court concludes that Plaintiff's negligence action is well-pleaded for purposes of Rule 8 and supports default judgment.  Furthermore, because the Court concludes that Plaintiff's factual allegations are well-pleaded, Defendant is deemed to have admitted

these allegations.  S*ee Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . .").  For these reasons, the Court determines that Plaintiff's pleading satisfies the "low threshold of Rule 8" and supports entry of default judgment against Defendant.  *Wooten,* 788 F.3d at 498.

### D.   Relief

The Court next considers whether default judgment can be entered without resort to an evidentiary hearing.  Since the requested judgment can be computed with accuracy and is supported by well-pleaded factual allegations, the Court concludes that default judgment in the amount of $128,017.21 can be entered against Defendant without resort to an evidentiary hearing.

Pursuant to Rule 55, a court "may conduct hearings" when "it needs to . . . determine the amount of damages" in a request for default judgment.  Fed. R. Civ. P. 55(b)(2); *see also James v. Frame (In re frame)*, 6 F.3d 307, 310 (5th Cir. 1993) ("[R]ule [55] grants the district court wide latitude" to decide when an evidentiary hearing is necessary.).  This authority is necessary because a party's default "typically arises early in the proceedings, often when the court has

received little substantive evidence" and thus lacks a basis to determine damages. *James,* 6 F.3d at 310.  However, when damages can be "computed with certainty by reference to the pleadings and supporting documents alone," district courts retain discretion to forgo evidentiary hearings that will not reveal pertinent information. *Id.* at 311 (quotation omitted); *see also* Fed. R. Civ. P. 55(b)(2) ("[T]he court *may* conduct hearings" when "it needs to . . . .") (emphasis added).

In the present case, Plaintiff requests default judgment in the amount of $128,017.21.  Mot. ¶ 7.  Plaintiff has filed its Motion, the Affidavit, and the Payment Log in support of this request.  According to the filings, $203,337.21 was paid to the Insured "as a result of damages the incurred due to the negligence of Defendant."  Mot. ¶ 6; Aff. ¶ 4; Payment Log 1 (reflecting that Plaintiff paid the Insured $203,337.21 on October 28, 2019).

Although $203,337.21 was paid to the Insured, Plaintiff further explains that, after "resolv[ing] a portion of this claim with . . . [Bekins]," Plaintiff was able to recoup $75,320.00.  Mot. ¶ 7; Aff. ¶ 5. Thus, after reducing the amount paid to the Insurers ($203,337.21) by

the amount received from Bekins ($75,320), Plaintiff avers that "$128,017.21 [remains] due and owing from Defendant."  Mot. ¶ 7.

After due consideration, the Court determines that an evidentiary hearing on damages is unnecessary because Plaintiff's pleading and supporting documentation provide an adequate basis for the entry of default judgment in the amount of $128,017.21.

### E.   *Lindsey* Factors Support Default Judgment

Finally, the Court considers whether this case presents an "extreme" circumstance in which default judgment is warranted. *Sun Bank*, 874 F.2d at 276.  As discussed above, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules."  *Lewis*, 236 F.3d at 767 (quoting *id*.).  In *Lindsey v. Prive Corp*, the Fifth Circuit articulated the factors relevant to the entry of a default judgment:

> Relevant factors include whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.

161 F.3d 886, 893 (5th Cir. 1998).  For the following reasons, the Court determines that the *Lindsey* factors weigh in favor of default judgment.

20

First, no material issue of fact is present in this case.  Defendant has not cast doubt on any of Plaintiff's factual allegations, and, by virtue of its default, Defendant is deemed to admit Plaintiff's well-pleaded allegations.  *Nishimatsu*, 515 F.2d at 1206.  Second, Plaintiff has been prejudiced by Defendant's default.  Plaintiff has invested time and resources in this case, but the "adversary process has been halted" because Defendant has refused to participate in the proceedings.  *Sun Bank*, 874 F.2d at 276 (quotation omitted).  Third, Defendant's default is clearly established.  *See supra*, Part II.B.  Fourth, Defendant's default was not caused by a good faith mistake.  The present record does not suggest Defendant ever intended to contest Plaintiff's claim, and the Court does not see any basis for excusing Defendant's default.  *Cf., e.g.*, *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 184 (5th Cir. 1985) (excusing default resulting from an untimely filing); *Avdeef v. Royal Bank of Scot., P.L.C.*, 616 F. App'x 665, 672 (5th Cir. 2015) (excusing default resulting from inadequate service of process).  Instead, the Court determines that, because Defendant has not offered any excuse for its default, Defendant's default is intentional and willful.  *See Beitel v. OCA, Inc. (In re OCA, Inc.)*, 551 F.3d 359, 370

21

n.32 (5th Cir. 2008) ("A willful default is an 'intentional failure' to respond to litigation.") (quoting *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)).

Moreover, because the Court concludes that Defendant's default is willful, default judgment is not an unduly harsh remedy. *See A.P. Moller - Maersk A/S v. Safewater Lines (I) Pvt., Ltd.*, 784 F. App'x 221, 228 (5th Cir. 2019) ("[W]here the defending party has never responded to any pleadings or documents throughout the litigation . . . the district court in its discretion is likely to grant the harsh remedy of a default judgment."). Consequently, the Court would not be obliged to set aside the judgment upon Defendant's motion. *See Jenkens & Gilchrist a Prof'l Corp. v. Groia & Co.*, 542 F.3d 114, 119–20 (5th Cir. 2008) ("A district  court has the discretion to refuse to set aside a default judgment . . . if a district court finds a defendant's default to be willful . . . .").

Thus, the Court concludes that the *Lindsey* factors weigh in favor of a default judgment against Defendant.

## III.   CONCLUSION

For these reasons, the Court concludes that the request for default judgment is procedurally warranted, that the pleading suffices to support the entry of default judgment without resort to an evidentiary hearing, and that the above-captioned cause is a situation where the entry of default judgment is appropriate.

Accordingly, **IT IS ORDERED** that Plaintiff Farmers Insurance Company, Inc.'s "Motion for Entry of Default" (ECF No. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that **DEFAULT JUDGMENT** is hereby **ENTERED IN FAVOR** of Plaintiff Farmers Insurance Company, Inc., and **AGAINST** Defendant Quality Truck & Trailer Repair, as to Plaintiff Farmers Insurance Company, Inc.'s negligence claim, pursuant to Federal Rule of Civil Procedure 55(b)(2).

**IT IS FURTHER ORDERED** that Plaintiff Farmers Insurance Company, Inc is **AWARDED** judgment of $128,017.21.

**IT IS FURTHER ORDERED** that all settings in this matter are **VACATED**.

23

IT IS FURTHER ORDERED that all pending motions, if any, are **DENIED AS MOOT**.

IT IS FINALLY ORDERED that the **CLERK** shall **CLOSE** this matter.

SIGNED this ___ day of October, 2020.

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE